IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LABORANT, LLC,

                    Plaintiffs,

          v.

THE UNITED STATES,

                    Defendant.

No. 24-1432
(Judge Elaine D. Kaplan)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL

CORINNE A. NIOSI
Assistant Director

MITCHELL ZEFF
ERIN PODOLNY
ADAM SORKIN
National Complex Litigation and
Investigations Division
Public Health Division
Office of the General Counsel
U.S. Dept. of Health & Human Services

GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

*Attorneys for the United States*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

INDEX OF EXHIBITS ................................................................................................................... iii

STATEMENT OF THE ISSUE ....................................................................................................... 1

STATEMENT OF THE CASE ........................................................................................................ 1

    I.     Procedural History ............................................................................................... 1

    II.    The Claims Submission and Adjudication Process ................................................. 2

    III.   Laborant's Claim History ...................................................................................... 5

ARGUMENT .................................................................................................................................. 7

    I.     Legal Standards ..................................................................................................... 7

    II.    Laborant Has No Valid Outstanding Unpaid Claims ............................................. 8

    III.   Laborant Cannot Avoid the March 22, 2022 Claim Submission
         Deadline through the Covenant of Good Faith and Fair Dealing ......................... 11

CONCLUSION ............................................................................................................................. 12

TABLE OF AUTHORITIES

FEDERAL CASES

*Almanza v. United States*,
　　127 Fed. Cl. 521 (2016) ............................................................................................ 7

*Anderson v. Liberty Lobby, Inc.*,
　　477 U.S. 242 (1986) ................................................................................................ 7

*Celotex Corp. v. Catrett*,
　　477 U.S. 317 (1986) ............................................................................................. 7, 8

*San Carlos Irrigation & Drainage Dist. v. United States*,
　　877 F.2d 957 (Fed. Cir. 1989) ................................................................................ 7

*Scott Timber Co. v. United States*,
　　692 F.3d 1365 (Fed. Cir. 2012) ............................................................................. 12

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
　　833 F.2d 1560 (Fed. Cir. 1987) ............................................................................... 7

OTHER AUTHORITIES

31 U.S.C. § 1501 ................................................................................................................. 5

*Restatement (Second) of Contracts* § 205 (1981) ........................................................... 12

INDEX OF EXHIBITS

Ex. A, Declaration of Alexandra Huttinger

Ex. B, Universe of Claims File for Laborant [FILED SEPARATELY UNDER SEAL]

Ex. C, March 16, 2022 Communication re Deadline

Ex. D, March 21, 2022 Communication re Deadline

Ex. E, HRSA COVID-19 Uninsured Program Claims Submission Deadline FAQs

Ex. F, Email from Mr. Wieroniey to Ms. Fomenkova, May 14, 2026

Ex. G, FactSet Mergerstat, *Change Healthcare Corp*, M&A DATABASE (2026)

Ex. H, UnitedHealth Grp. Inc., Subsidiaries of the Company (Form 10-K) Exhibit 21.1
    (Feb. 27, 2025)

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully requests that the Court grant summary judgment in favor of the United States because there can be no genuine issue of material fact that plaintiff, Laborant, LLC (Laborant), has no outstanding claims that were timely submitted; all claims timely received by the Health Resources and Services Administration (HRSA) from Laborant through the Uninsured Program were either paid or found to have failed to meet the program's terms. Claims that were not timely submitted preclude any possibility of contract formation, and by extension also preclude any possibility of a breach of the duty of good faith and fair dealing.

STATEMENT OF THE ISSUE

Whether the Court should grant summary judgment in favor of the United States because Laborant has no valid unpaid timely submitted claims.

STATEMENT OF THE CASE

I.    Procedural History

Laborant filed the operative amended complaint on March 28, 2025, purporting to bring three counts:  breach of contract, breach of the duty of good faith and fair dealing, and a violation of an alleged money-mandating statute.  ECF 15.  Defendant moved to dismiss the first two contract-based counts for failure to state a claim, and the third purportedly statutory count for lack of jurisdiction.  ECF 18.  The Court granted in part and denied in part the Government's motion to dismiss on February 10, 2026, dismissing the statutory count but permitting the two contract-based counts to go forward.  ECF 27.

Specifically, the Court found "that the facts as alleged by Laborant, plausibly state claims that: (1) the Uninsured Program operated as an offer by HRSA to reimburse health care providers at Medicare rates under the Program's Terms and Conditions and (2) Laborant accepted the offer by affirmatively agreeing to the Terms and Conditions, performing covered

services, and submitting *timely* claims for reimbursement."  ECF 27 at 9 (emphasis added); *see* ECF 27 at 8 ("The Program materials plausibly reflect a commitment (subject to the availability of funding) to pay Program enrollees that performed covered services, complied with its Terms and Conditions, and filed *timely* claims for reimbursement.") (emphasis added).  Thus, under the breach of contract theory the Court accepted as plausibly pled, the *timely* submission of claims is a necessary threshold element of contract formation.

II.      The Claims Submission and Adjudication Process

The Uninsured Program was administered by HRSA with technical assistance from, during the timeframe relevant to this case, OptumServe Technology Services, Inc. (OptumServe).  As discussed in the briefing on the motion to dismiss, there were multiple steps to the claim submission process:

*First*, in order to submit claims for reimbursement, a healthcare provider had to enroll in the program through the online UIP Portal by submitting its Taxpayer Identification Number, linking a bank account for direct deposit, and, if not the provider did not previously do business with OptumServe, submitting a provider roster (*i.e.*, a list of individual healthcare providers who would actually provide the services/treatment).  This provider enrollment step only occurred once, and there is no dispute that Laborant completed this step and so could, in principle, submit claims to the program.  Huttinger Decl. ¶¶23–24.  The remaining steps were required to be repeated with each claim submission.

*Second*, the enrolled provider would submit a patient roster, which contained details about the patient and the service:  name, date of birth, date of service, address, etc.  Along with submitting each patient roster, the provider was also required to attest that, *inter alia*, it will comply with the terms and conditions in effect at the time of attestation if the claim is reimbursed and to its "further understand[ing] that reimbursement is subject to available funding for the

program." This second step also occurred through the UIP Portal. Huttinger Decl. ¶¶25–26.

*Third*, once a provider successfully uploaded a patient roster into the UIP Portal, OptumServe analyzed the patient information as submitted by the provider to verify eligibility for the Uninsured Program. If the verification process determined that the patient was uninsured at the time of service (*i.e.*, the services were not subject to reimbursement from other sources, for example, Medicare or private insurance), and was therefore eligible to participate in the Uninsured Program, OptumServe would issue a unique temporary ID to the patient. If the verification process determined that the patient had healthcare coverage at the time of service, a temporary member ID was not issued for that patient. Huttinger Decl. ¶27. When the provider subsequently submitted a claim, the claim was required to be submitted under a valid temporary member ID.

A temporary member ID was valid for 120 days from the date of service identified on the patient roster. So, for example, if at step two, a provider submitted a patient roster that lists Patient A as having been tested on January 1, and OptumServe determined that Patient A did not have insurance on January 1 and issued a temporary member ID, that provider can submit claims on behalf of Patient A for services administered between January 1 and April 30 using that same temporary member ID. But if that provider administers another test to Patient A in May, then in order for that provider to successfully submit that claim to the Uninsured Program, the provider would have to re-submit Patient A on a new patient roster with that May date of service, and OptumServe would have to re-validate that Patient A remained uninsured on that date in May and then re-issue a temporary member ID that could be used for claims submission for another 120 days thereafter. Huttinger Decl. ¶27.

*Fourth*, once a temporary member ID number was generated and assigned, the healthcare provider could proceed to submit a claim for that patient. Huttinger Decl. ¶28. Unlike the earlier

3

steps, claim submission did not occur through the UIP Portal.  Rather, claims were submitted through the Medicare Electronic Data Interchange (MEDI) and received by OptumServe at the UIP Electronic Data Interchange (EDI) Gateway; claims were required to be in a particular technical format.  In practice, providers used a clearinghouse to submit claims in this required format through MEDI.  Huttinger Decl. ¶30.  A clearinghouse (also sometimes called a medical intermediary) is a third-party organization that enables the exchange of healthcare data between the provider and the payer (*e.g.*, an insurance company or a government agency) and is not affiliated with HRSA.  There were multiple clearinghouses that providers participating in the Uninsured Program could choose to work with.  Critically, a claim was not considered *submitted* to the Uninsured Program until it was received by HRSA's contractor OptumServe in the UIP EDI Gateway.  That is, submission of claims by a provider to their clearinghouse of choice did not constitute submission of claims to the Uninsured Program; the clearinghouse still had to submit the claims through MEDI to be received in the UIP EDI Gateway.  Huttinger Decl. ¶32.

Once a claim was received by OptumServe at the UIP EDI Gateway, it was validated for threshold exclusion criteria, *e.g.*, timeliness, valid temporary member ID, duplicative claims, service codes not covered under the Uninsured Program, and billing/provider data errors.  The various exclusion criteria were run sequentially; thus, a claim that could have been rejected for multiple reasons—*e.g.*, both timeliness and an invalid temporary member ID—would only appear in the system as rejected under the first exclusion criteria that was found to be applicable. Claims that failed any of these threshold validations were rejected.  Claims that passed these so-called "Gateway" validation steps were "accepted" and entered into a system called COSMOS for adjudication, which could involve either automated or manual review.  Huttinger Decl. ¶39. Upon completing the adjudication process in COSMOS, OptumServe would send a funding

request to HRSA for the total amount of funds required for reimbursement of the claims that passed both the Gateway review and COSMOS adjudication processes.  Huttinger Decl. ¶40. OptumServe could not disburse any funds to providers until those funds were approved and obligated by HRSA.  Huttinger Decl. ¶19.

At HRSA, the funding approval process also had several steps.  First, the Associate Administrator of the Provider Relief Bureau  (or their designee) had to approve the funding request, and then that approval was transmitted to HRSA's Office of Budget and Finance, where the funds were officially obligated.  Huttinger Decl. ¶¶41–45; *see* 31 U.S.C. § 1501.  Once the funding request was authorized by HRSA and those funds were obligated, OptumServe would issue reimbursements for the claims underlying that funding request to the providers.

III.     Laborant's Claim History

Over the life of the Uninsured Program, Laborant submitted a total of 22,326 testing and treatment claims that were received by OptumServe.  Every claim was processed and either paid or determined to be ineligible for payment.  A summary of the disposition of all of Laborant's claims is as follows:

|  | Testing | Treatment | Total |
|---|---|---|---|
| Rejected (untimely) | 10,954 | 0 | 10,954 |
| Rejected (invalid temporary member ID) | 2,463 (of which 2,454 may also be untimely) | 258 | 2,721 (of which 2,454 may also be untimely) |
| Rejected (duplicate) | 4 (of which 1 may also be untimely) | 5 | 9 (of which 1 may also be untimely) |
| Processed and Not Paid for Other Reasons (e.g. invalid procedure code, invalid submission) | 1 | 23 | 24 |
| Paid | 601 | 8,017 | 8,618 |
| Total | 14,023 | 8,303 | 22,326 |

Huttinger Decl. ¶65; *see generally* Ex. B, Universe of Claim File.  Laborant received a total of

$624,665.22 in reimbursements for its claims, of which $2,928.39 stands as an outstanding

overpayment.[1]  Huttinger Decl. ¶56; Ex. B, p. 1 (Summary).

Prior to filing suit, Laborant made a demand to HRSA for reimbursement of 9,152 testing

claims.  In making that demand, Laborant submitted a spreadsheet that contained some

information associated with the claims it was demanding reimbursement for, though critically,

Laborant did not include the unique claim number identifier associated with those claims, which

would have enabled their definitive identification.  Laborant has confirmed that it is pursuing in

this litigation the same claims that it sought payment for in its pre-litigation demand, sans three.

Ex. F.  However, Laborant has still been unable to provide the unique claim number identifier for

any of its claims, and so out of an abundance of caution, HRSA conducted its analysis with

respect to all 9,152 claims as originally identified.  To the best of HRSA's efforts to identify the

subset of the 9,152 claims in Laborant's demand—by triangulating based on patient name, date

of birth, and date of service—that subset of claims breaks down as follows:

| Disposition of Claim | Number of Claims |
| --- | --- |
| Paid | 301 |
| Rejected | |
| Submitted after testing/treatment deadline | 7,395 |
| Invalid temporary member ID | 1,279 (may also all be untimely) |
| No record of claim, *i.e.* not submitted to the UIP | 177 |
| Total | 9,152 |

Huttinger Decl. ¶60.  Because there appear to be duplicate versions of some claims, HRSA

---

[1]  HRSA was unable to offset that overpayment from future reimbursements in the regular
course because the program ended, but to the extent that this case proceeds to a damages
analysis, that overpayment should be offset from any recovery here.

conducted the above analysis based on the posture of the claims most favorable to Laborant that

it could locate, *e.g.* if there was a paid version of a claim, and then a later duplicate version

submitted after the deadline, HRSA counted that as a paid claim rather than an untimely one.

Huttinger Decl. ¶59.

ARGUMENT

I.      Legal Standards

"Summary judgment may be granted where there is no genuine issue of material fact and

the movant is entitled to judgment as a matter of law." *Almanza v. United States*, 127 Fed. Cl.

521, 525 (2016), *aff'd*, 935 F.3d 1332 (Fed. Cir. 2019).  "A fact is material if it 'might affect the

outcome of the suit under the governing law.'  An issue is genuine if it 'may reasonably be

resolved in favor of either party.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 250 (1986)).

Ultimately, in order to prevail in this case, Laborant has the burden of proof to establish

(1) the formation of a valid contract between the parties, (2) an obligation or duty arising out of

the contract, (3) a breach of that duty, and (4) damages caused by the breach.  *See San Carlos

Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).  Because

Laborant has the ultimate burden of proof, at summary judgment "the burden is *not* on the

movant to *produce evidence* showing the *absence* of a genuine issue of material fact."  *Sweats

Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (emphasis in

original).  Rather, summary judgment in favor of the Government is appropriate if Laborant

"fail[s] to make a sufficient showing on" any one of the elements it must ultimately prove, even

though it is the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In such a

situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

7

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

II.    Laborant Has No Valid Outstanding Unpaid Claims

Even if the Court were to ultimately find that an implied-in-fact contract was formed at the point of claim submission—*i.e.* without HRSA's approval of a particular claim—Laborant has no valid outstanding unpaid claims. In other words, even if Laborant could prove the contract formation facts that the Court assumed were true at the motion to dismiss stage, its case would still fail on the merits, and summary judgment in favor of the Government is proper.[2]

Looking at the 9,152 claims that Laborant submitted to HRSA with its pre-litigation demand, HRSA's analysis demonstrates that 301 claims were already paid and the rest were not eligible for payment—they were either rejected for having invalid temporary member IDs (1,279 claims), rejected for being untimely, *i.e.*, submitted *after* the March 22, 2022 deadline for testing claims (7,395 claims), or not submitted at all (177 claims). For claims that were paid, summary judgment is proper because Laborant can have no legal entitlement to double-recovery. For the claims that were not timely submitted, summary judgment is proper because there can be no possibility of contract formation with respect to those claims. *See* ECF 27 at 9 (requiring, at minimum, timely submission of claims to constitute acceptance). And for claims that were rejected for having invalid temporary IDs—which may also have been untimely—summary judgment is proper for two reasons, because there is either no possibility of contract formation

---

² This motion for summary judgment is based on the grounds that Laborant has no valid unpaid timely claims, and thus Laborant's case fails even if a contract could be formed at the point of claim submission. Should the Court deny the motion, defendant reserves the right to challenge Laborant's ability to prove any element of contract formation, in addition to breach, and damages, by the preponderance of the evidence standard to which it must be held in order to prevail to judgment.

(due to untimeliness) with respect to those claims or they failed to meet the terms of any contract that could be formed (due to a lack of a required claim element, a valid temporary member ID).

We pause here to address Exhibit 1 to Laborant's complaint, which Laborant has stated is meant to correspond to the 9,152 claims it demanded payment for from HRSA in pre-litigation, and has taken the position that it demonstrates that all but two of those claims were timely submitted by March 22, 2022.  *See* Ex. F; Amd. Compl. ¶34.  Laborant relies on the fact that the letter appears on "Optum" letterhead, and purports to "confirm that each of the following claims were submitted by [Laborant] to Optum on the submission date next to each claim."  ECF 15-1 at 1, 291; Amd. Compl. ¶32.

But none of the references to "Optum" in this letter correspond to the UnitedHealth Group subsidiary *OptumServe Technology Services, Inc.*, which was HRSA's contractor for technical administration of the Uninsured Program.  Rather, the references to "Optum" in this letter correspond to a *different* UnitedHealth Group subsidiary, *OptumInsight, Inc.*, which in October 2022—*i.e.* more than six months after the submission deadline at issue here—acquired Change Healthcare Corp., which happened to be the clearinghouse that Laborant chose to work with for its claim submission.  *See* FactSet Mergerstat, *Change Healthcare Corp*, M&A DATABASE (2026) (Ex. G); *see also* UnitedHealth Grp. Inc., Subsidiaries of the Company (Form 10-K) Exhibit 21.1 (Feb. 27, 2025) at 40 & 41 (Ex. H) (both OptumInsight, Inc. and OptumServe Technology Services, Inc. do business as "Optum").  Tellingly, the letter references a "Change healthcare Service Request Number" and is sent by an individual whose email address is "@changehealthcare.com."  At most, this letter represents when Laborant submitted these claims *to its clearinghouse*.  *See* Huttinger Decl. ¶¶61–64.  Although that is a question that HRSA has no ability to independently verify, as HRSA played no role in that relationship, it reveals nothing

9

about whether or when the clearinghouse submitted those claims *to the Uninsured Program*. Thus, this letter in no way rebuts HRSA's analysis of Laborant's claims, which confirmed that there were no valid timely submitted unpaid claims in Laborant's demand.

Looking more broadly at Laborant's entire Universe of Claims file, HRSA's analysis further confirms that summary judgment is proper. The Universe of Claims file contains every claim HRSA received from Laborant through the Uninsured Program. The key operative columns and filter criteria in this data collection are (taking the columns from left to right):

- gatewaystatus = this column represents the threshold validation criteria

    o    ACCEPTED = claims that passed all threshold validation criteria and proceeded to COSMOS for adjudication

    o    REJECTED-ACE & REJECTED-GATEWAY = the claim failed one of the threshold validation criteria (other than invalid temporary ID, which had its own category (see below)), including timeliness

    o    REJECTED-MEMBERPICK = the claim failed the threshold validation due to an invalid temporary member ID

    o    COSMOS Rework Claim = adjustments that were subsequently made to previously ACCEPTED claims (these rows are consequently not counted toward the 22,326 testing and treatment claims total that the Uninsured Program received from Laborant)

- originalsubmissiondate = the date the claim was received at the Gateway; as a standard practice of ingesting claims, claims received after 4 pm EST were processed the following day and would have their submission date recorded as the following date[3]

- checkwritestatus = this column represents whether a claim was paid

    o    paid = claims that were approved by HRSA, and reimbursed

---

[3] Thus, for example, Laborant has about 20 claims that appear to have an "original submission date" of March 23, 2022, while also being in "accepted" under "gateway status," and "paid" under "check write status." These claims were received after 4 pm EST on March 22, 2022, but before the 11:59 pm EST deadline (*i.e.*, were timely), and do not indicate a deviation from the submission deadline.

- paymentfor = this column represents what type of claim it was

- rejectreason = the reason the claim was found ineligible for payment (corresponds to the "gatewaystatus" data)

*See also* Ex. B, pp. 11342–46 (Data Dictionary).

Analyzing the total universe of claims HRSA received from Laborant with the aid of these various filters reveals that there are no outstanding claims that were not processed and either (1) paid or (2) failed to meet eligibility for payment, either because they were not timely submitted or because they failed to meet other requirements. *See* Huttinger Decl. ¶65; Section III (Statement of the Case), above. Thus, even if Laborant could ultimately prove that a contract was formed upon the timely submission of its claims, it still could not recover any additional compensation, and the Government is entitled to judgment as a matter of law.

III.    Laborant Cannot Avoid the March 22, 2022 Claim Submission Deadline through the Covenant of Good Faith and Fair Dealing

Laborant has further suggested that even if its claims were submitted after the March 22, 2022 deadline, its claims are still timely if they were submitted within 365 days of the date of service, because the imposition of the March 22, 2022 deadline in the first place constitutes a breach of the duty of good faith and fair dealing. *See* Amd. Compl. ¶57. At the outset, this argument does not affect the propriety of summary judgment with respect to either claims that have already been paid or claims that were rejected or denied for other additional reasons, *e.g.*, invalid member ID, or claims that were never submitted at all. That is, this argument, even if accepted, cannot help Laborant avoid judgment with respect to at least 1,757 of its 9,152 claims; nor looking at the total universe of its submitted claims, would it have any effect on the disposition of 11,372 out of the 22,326.

Laborant's argument is also legally precluded, and so cannot rescue *any* of its claims. In denying our motion to dismiss, the Court found "that the facts as alleged by Laborant, plausibly

11

state claims that: (1) the Uninsured Program operated as an offer by HRSA to reimburse health care providers at Medicare rates under the Program's Terms and Conditions and (2) Laborant *accepted the offer* by affirmatively agreeing to the Terms and Conditions, performing covered services, and submitting *timely* claims for reimbursement." ECF 27 at 9 (emphasis added). Under that formulation, the earliest possible point of contract formation is upon the submission of claims, which means the change in the submission deadline operated as, at most, a new term of HRSA's alleged offer and constitutes agency action that necessarily occurred *before* the alleged contract formation.

The Federal Circuit has unequivocally held that "because the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, *there is no claim for a breach of this covenant where a valid contract has not yet been formed*." *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (cleaned up, emphasis added, collecting cases). Or, in other words, the duty of good faith and fair dealing "does not deal with good faith in the formation of a contract." *Id*. (quoting *Restatement (Second) of Contracts* § 205 (1981)). Thus, HRSA's imposition of the March 22, 2022 deadline for the submission of testing claims cannot, as a matter of law, constitute a breach of the duty of good faith and fair dealing implied in the contract the Court found Laborant to have plausibly pled.

CONCLUSION

For the foregoing reasons, we respectfully request the Court enter judgment in favor of the United States.

12

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

OF COUNSEL

MITCHELL ZEFF
ERIN PODOLNY
ADAM SORKIN
National Complex Litigation and
Investigations Division
Public Health Division
Office of the General Counsel
U.S. Dept. of Health & Human Services

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O.  Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

June 30, 2026

*Attorneys for the United States*

13