**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LABORANT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 24-1432<br>(Judge Elaine D. Kaplan) |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


ROGERS JOSEPH O'DONNELL

Aaron P. Silberman
311 California Street, 10th Floor
San Francisco, CA 94104
Tel: 415-956-2828
Asilberman@rjo.com

Jules L. Szanton
1500 K Street NW, Suite 800
Washington, DC 20005
Tel: 202-777-8950
Jszanton@rjo.com


September 4, 2026


Counsel for Laborant, LLC

# TABLE OF CONTENTS

**Page No.**


I. INTRODUCTION ..... 1

II. STATEMENT OF THE ISSUES ..... 1

III. STATEMENT OF THE CASE ..... 2

A. Laborant provided services to the government in accordance with a set of Terms and Conditions set by the government. ..... 2

B. The government purports to change the deadline to submit claims, without defining what it meant to "submit" a claim ..... 5

C. Laborant submits its outstanding claims to the government-designated clearinghouse by March 22, 2022. ..... 5

D. The government denies Laborant's claims. ..... 6

E. Litigation begins. ..... 7

F. The government claims the case can be resolved on timeliness grounds. ..... 8

G. Discovery is limited by the Court order and stymied by the government's evasive and incomplete responses ..... 9

H. The government's motion for summary judgment extends to issues outside the Court order. ..... 10

IV. LAW ..... 11

V. DISCUSSION ..... 11

A. The government's motion should be denied because Laborant has not yet had the opportunity to explore the government's theories in discovery. ..... 11

B. The government's motion should be denied because there remains a genuine dispute of material fact as to whether a contract existed on March 15, 2022, when the government purported to accelerate Laborant's deadline to submit its claims. ..... 15

C. The government's motion should be denied because there remains a genuine dispute of material fact as to what it meant for Laborant to "submit" claims for its services. ..... 19

VI. CONCLUSION ..... 22

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ... 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ... 11, 12

*Centex Corp. v. United States*,
395 F.3d 1283 (Fed. Cir. 2005) ... 16

*Davies Precision Machining, Inc. v. United States*,
35 Fed. Cl. 651 (1996) ... 18

*Laborant, LLC v. United States*,
180 Fed. Cl. 76 (2026) ... *passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ... 11

*Mingus Constructors, Inc. v. United States*,
812 F.2d 1387 (Fed. Cir. 1987) ... 11

*Rumsfeld v. Freedom NY, Inc.*,
329 F.3d 1320 (Fed. Cir. 2003) ... 15

**Statutes**

Updates on the CARES Act ... 2

**Other Authorities**

available at https://www.hrsa.gov/about/faqs/how-do-eligible-providers-receive-funding-uninsured ... 3

HRSA, *Terms and Conditions for Participation in the HRSA COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program* (June 2021), available at https://www.hrsa.gov/sites/default/files/hrsa/provider-relief/uninsured-program-terms-conditions-6-21.pdf ... 4

http://www.hrsa.gov/coviduninsuredclaim ... 2

Public Health and Social Service Emergency Fund, H. Comm. on Ways & Means (Apr. 22, 2020), available at https://waysandmeans.house.gov/2020/04/22/updates-on-the-cares-act-public-health-and-social-service-emergency-fund/ ... 2

Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing, Donald J. Trump White House Archives (Apr. 3, 2020), available at https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-18/ ....................2

Restatement (Second) of Contracts § 45 (1981) ....................17, 18

Rules of the United States Court of Federal Claims Rule 56 ....................1

## I. INTRODUCTION

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), Laborant, LLC ("Laborant" or "Plaintiff"), respectfully submits this response in opposition to the motion ("Government MSJ") filed by the United States ("government" or "Defendant") seeking summary judgment in this case. ECF No. 36.

The Court should deny the government's motion for three reasons, each of which is independently sufficient. ***First,*** the government's motion relies on theories on which Laborant has not yet had the opportunity to take discovery. ***Second,*** there remains a genuine dispute of material fact as to whether a contract existed on March 15, 2022, when the government purported to accelerate Laborant's deadline to submit its claims. This disputed fact alone is fatal to the government's motion, as the government has not even tried to make a backup argument that there are no disputed material facts as to whether its decision to alter Laborant's terms of payment would be permissible if a contract (and, therefore, a duty of good faith and fair dealing) existed. And ***finally,*** there remains a genuine dispute of material fact as to whether Laborant's submission of its claims to a government-designated clearinghouse by March 22, 2022—the day of the government's purported accelerated deadline to submit claims for payment—constituted "submission" of its claim to the COVID-19 Uninsured Program (UIP).

## II. STATEMENT OF THE ISSUES

**1.** Should the Court deny the government's motion for summary judgment under RCFC 56(d) where the government's motion relies on issues on which Laborant has not yet had an opportunity to take discovery?

**2.** Is there a genuine dispute of material fact as to whether a contract existed between Laborant and the government on March 15, 2022—the day on which the government purported to accelerate its deadline for Laborant to submit claims for its services?

**3.** Is there a genuine dispute of material fact as to what it meant for Laborant to "submit" claims for its services?

## III. STATEMENT OF THE CASE

### A. Laborant provided services to the government in accordance with a set of Terms and Conditions set by the government.

Laborant is a family-owned small business founded during the COVID-19 pandemic with a mission to provide COVID-19 care and testing, particularly to members of the South Florida community who lacked health insurance. Laborant provided these services as a participant in the COVID-19 Uninsured Program ("COVID-19 UIP") administered by the Health Resources and Services Administration ("HRSA"), an agency within the U.S. Department of Health and Human Services. Ex. 4 ("Demianchenko Declaration") at 1.

The COVID-19 UIP was created with funding from several statutes which authorized funding to reimburse providers for COVID-19 testing and treatment for uninsured patients. *See Laborant, LLC v. United States,* 180 Fed. Cl. 76, 80–81 (2026). Using these authorities and funding sources, the Trump Administration announced on April 3, 2020, the creation of a program "to cover providers' costs of delivering COVID-19 care for the uninsured" at no cost to the patient, with participating providers agreeing not to bill patients and to accept reimbursement at Medicare rates. *See* Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing, Donald J. Trump White House Archives (Apr. 3, 2020), available at https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-18/.

By April 22, 2020, HRSA had created a website[1] for providers to register for the COVID-19 UIP, with a promise that HRSA would "reimburse providers for COVID-19 related treatment of uninsured patients at Medicare rates." *See* Updates on the CARES Act Public Health and Social Service Emergency Fund, H. Comm. on Ways & Means (Apr. 22, 2020), available at

[1] http://www.hrsa.gov/coviduninsuredclaim.

https://waysandmeans.house.gov/2020/04/22/updates-on-the-cares-act-public-health-and-social-service-emergency-fund/.

In December of 2020, Laborant registered as an enrolled provider in the UIP. As per the HRSA website, providers made four attestations upon registering for the program:

> To participate, providers must attest to the following ***at registration:***
>
> - They have checked for health care coverage eligibility and confirmed that the patient is uninsured. They have verified that the patient does not have health care coverage, and no other payer will reimburse them for COVID-19 testing and/or care or vaccine administration for that patient.
> - They will accept defined program reimbursement as payment in full.
> - ***They will agree not to balance bill the patient.***
> - ***They will agree to program terms and conditions*** and may be subject to post-reimbursement audit review.

HRSA, *How Do Eligible Providers Receive Funding? (Uninsured)* (available at https://www.hrsa.gov/about/faqs/how-do-eligible-providers-receive-funding-uninsured (emphasis added).

The COVID-19 UIP terms and conditions—with which Laborant promised to comply upon registering as a COVID-19 UIP provider—changed slightly throughout the life of the program. *See* Government MSJ, Ex. A ("Huttinger Declaration") at 6. Each version, however, contained at its core a commitment that the provider would not charge an uninsured patient and would instead accept reimbursement from the government as the only payment for its services. This commitment is stated in the COVID-19 UIP terms and conditions currently on the HRSA website:

> The Recipient certifies that *it will not engage in "balance billing" or charge any type of cost sharing for any items or services provided to Uninsured Individuals* receiving a COVID-19 testing and/or testing related items, vaccination or care or treatment for a positive diagnosis of COVID-19 for which the Recipient receives a Payment from the Uninsured Program Fund. The Recipient must not sell or seek reimbursement from an Uninsured Individual for

> any COVID-19 vaccine and any adjuvant, syringes, needles, or other constituent products and ancillary supplies that the federal government provides at no cost to the Recipient. *The Recipient shall consider Payment received from the Uninsured Program Fund to be payment in full* for such COVID-19 testing and/or testing-related items, vaccine administration, care, or treatment.

HRSA, *Terms and Conditions for Participation in the HRSA COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program* (June 2021), available at https://www.hrsa.gov/sites/default/files/hrsa/provider-relief/uninsured-program-terms-conditions-6-21.pdf at 4 (emphasis added).

As part of Laborant's enrollment in the UIP, Laborant also registered with Change Healthcare, a government-designated clearinghouse, to enable payment. According to a communication released by HRSA on HRSA letterhead, Change Healthcare was a "designated clearinghouse" that HRSA represented was "working directly with" a HRSA contractor in order to "enable the delivery of professional and institutional claims." *See* Ex. 5 (Document UIP-LBT001121). According to a signed declaration from Mr. Vladimir Demianchenko, the Chief Executive Officer of Laborant, because "HRSA had identified Change Healthcare as one of the clearinghouses working with the Program's contractor to enable delivery of claims for the COVID-19 UIP," Mr. Demianchenko "understood Laborant's transmission of the claims to Change Healthcare by the announced deadline to constitute timely submission." Ex. 4 ("Demianchenko Declaration").

As an enrolled COVID-19 UIP provider, Laborant provided thousands of COVID-19 tests to uninsured patients. Much of Laborant's work has already been compensated and is not subject to this litigation. *See* Government MSJ at 6 ("Laborant received a total of $624,665.22 in reimbursements for its claims," of which the government only contests the

validity of $2,928.39). During the time when Laborant was providing its services, Laborant "had 365 days from the date of service to file claims for reimbursement." *Laborant,* 180 Fed. Cl. at 79; *see also* Demianchenko Declaration.

**B. The government purports to change the deadline to submit claims, without defining what it meant to "submit" a claim**

On March 15, 2022, the government purported to change the deadline by which claims had to be submitted to just *seven days later* – March 22, 2022, at 11:59 p.m. The government made this announcement, in part, through two emails sent to all providers enrolled in the COVID-19 UIP. In emails dated March 16 and 21, 2022, the government advised Laborant and other providers that, "[o]n March 22, 2022 at 11:59 pm ET, the HRSA COVID-19 Uninsured Program will stop accepting claims for testing and treatment due to a lack of sufficient funds." Government MSJ, Exs. C–D. These communications advised providers that "[c]laims that have been submitted by this deadline will be paid subject to eligibility and availability of funds." *Id.* Neither email provided a definition of "submitted."

A HRSA website also stated that "the deadlin[e] to submit…Testing claims" was March 22, 2022, at 11:59 p.m. ET, again without defining the word "submit." Government MSJ, Ex. E. Text lower on the page stated that "[a]ny testing and treatment claims submitted in the Portal after March 22, 2022, will not be adjudicated for payment." *Id.* The website did not explain what "the Portal" was, or clarify whether this referred to a provider-facing portal maintained by the government-designated clearinghouses or, instead, referred to a clearinghouse-facing portal.

**C. Laborant submits its outstanding claims to the government-designated clearinghouse by March 22, 2022.**

Upon learning that the government had purported to set a new deadline to submit its claims—including claims for work performed prior to the purported acceleration—Laborant scrambled to submit its outstanding invoices. In the week leading up to the purported March 22

deadline, Laborant submitted 9,149 individual claims worth a total of $2,384,515. A letter from the successor organization of Change Healthcare confirms that 9,149 of Laborant's claims were submitted to the government-designated clearinghouse on March 22, 2022. Ex. 1 ("Optum Letter").

### D. The government denies Laborant's claims.

Laborant has not received payment for any of the claims submitted to the government-designated clearinghouse on March 22, 2022. Prior to initiating litigation, Laborant made multiple attempts to understand why its claims had not been paid. In an email dated January 16, 2024, an HRSA official explained why HRSA refused to pay 9,152[2] claims about which Laborant had inquired:

| Disposition of Claim | Number of Claims |
|---|---|
| Claim submitted after testing/treatment deadline (March 22, 2022 at 11:59 PM ET) and rejected | 7,838 |
| Claim not submitted to the UIP | 1,312 |
| Claim paid | 1 |
| Duplicate claim (rejected) | 1 |
| GRAND TOTAL | 9,152 |

Ex. 2. (Email from Susan Marsiglia to Vladimir Demianchenko dated January 16, 2024). In other words, the government claimed that most of the claims at issue had been submitted after March 22, 2022—notwithstanding the fact that the claims were submitted to a government-designated clearinghouse by that time—and that another 1,312 had never been submitted at all.

[2] The 9,152 claims referenced in this email include the 9,149 claims at issue here, plus three other claims for which Laborant no longer seeks payment. *See* Government MSJ, Ex. F.

### E. Litigation begins.

Unsatisfied with this explanation, Laborant[3] filed a *pro se* complaint in the Court of Federal Claims on September 13, 2024, and an amended complaint through counsel on March 28, 2025. ECF Nos. 1 and 15. The amended complaint consisted of three counts: (I) the government breached its implied-in-fact contract with Laborant when it failed to pay for Laborant's services, (II) the government breached its implied covenant of good faith and fair dealing both in failing to pay Laborant for its services and also for purporting to accelerate Laborant's submission deadline from 365 days (beginning when Laborant provided services) to 7 days (beginning when the government notified Laborant of the purported change), and (III) the government's failure to pay violated a set of statutes funding COVID-19-related services. ECF No. 15.

On May 27, 2025, the government moved to dismiss all three counts. ECF No. 18. While the Court dismissed Count III of the amended complaint, the Court denied the remainder of the government's motion in a February 10, 2026 published decision. *Laborant, LLC v. United States,* 180 Fed. Cl. 76 (2026). The Court held that Laborant could pursue its claims in Count I (in which "Laborant alleges the government breached an implied-in-fact contract when it failed to reimburse Laborant's timely-submitted claims") and Count II (in which "Laborant claims the government's acceleration of the filing deadline constituted a breach of the implied covenant of good faith and fair dealing"). *Id.* at 79. The Court found that Laborant had pled the facts necessary to allege the existence of a contract between Laborant and the government through Laborant's participation in the COVID-19 UIP:

[3] The initial complaint was filed *pro se* with Mariia and Vladimir Demianchenko, the owners of Laborant, as plaintiffs. ECF No. 1. Subsequent filings terminated the Demianchenkos as plaintiffs and replaced them with Laborant. ECF No. 17.

> Laborant's allegations, taken as true, are sufficient to support its claim that the government made an offer to reimburse it at Medicare rates if it provided covered services to uninsured individuals in compliance with the Terms and Conditions of the Uninsured Program. They are also sufficient to show Laborant accepted the government's offer in the manner the government required when Laborant enrolled in the Program, expressly agreed to its Terms and Conditions, performed covered services, and filed claims for payment.

*Id*. at 84. The Court ordered the parties to file a Joint Preliminary Status Report proposing next steps. *Id*. at 91.

**F. The government claims the case can be resolved on timeliness grounds.**

In the parties' Joint Preliminary Status Report, filed on April 24, 2026, the parties laid out two different plans for resolving this litigation. ECF No. 32. Laborant requested "expedited trial scheduling" and sought unrestricted discovery on all relevant issues. *Id*. at 2. The government, in contrast, stated that it would file a motion for summary judgment that would assert "that plaintiff did not timely submit ***any*** of the claims on which its claims are based." *Id.* (emphasis added). The government argued that the Court should first "resolv[e] the threshold issue of whether plaintiff has ***any*** claims that were timely submitted in the first place." *Id*. at 3 (emphasis added).

The Court accepted the government's position. Based on the government's position that all of Laborant's invoices at issue were rejected because they were untimely, the Court issued a May 7, 2026 order limiting topics of discovery to "(1) whether Laborant timely submitted its claims for reimbursement and (2) whether the government breached the implied covenant of good faith and fair dealing when it accelerated the deadline to submit claims for reimbursement." ECF No. 33.

### G. Discovery is limited by the Court order and stymied by the government's evasive and incomplete responses

Because the government's motion for summary judgment was to be limited to (1) whether Laborant submitted its claims for reimbursement on time, and (2) whether the government's purported acceleration of the claim submission deadline violated the implied covenant of good faith and fair dealing, on June 5, 2026, Laborant served the government interrogatories, requests for admission, and document production requests that were limited to those two issues.

Laborant's requests for production included Request for Production 14, which requested that the government "[p]roduce any and all documents relating to the clearinghouse's roles in the UIP." This request should have resulted in the production of ***all*** internal HRSA documents and email communications discussing the role of the government-designated clearinghouses that worked with HRSA and its contractor as part of the COVID-19 UIP. This information would have helped the parties and Court assess whether the government considered a claim to be "submitted" when it was provided to a government-designated clearinghouse such as Change Healthcare.

The government's response, served to Laborant on July 29, 2026, offered to produce ***no*** documents in response to this request apart from a declaration from a government official—previously filed as part of a government motion—written in the midst of litigation and outlining the government's current litigation position. Ex. 3 (Defendant's Response and Objections to Plaintiff's First Set of Requests for Production). The government refused, for example, to search its files and email systems for internal documents written prior to litigation and relevant to these issues.

After a subsequent meet-and-confer letter and telephone conference, the government

ultimately produced additional documents to Laborant on September 1, 2026. In doing so, the government did not explain either how these documents were obtained or whether they represented the result of any search of the government's electronic records. In fact, the government affirmatively stated that the government would *not* conduct searches of its electronic files to identify whether documents with certain search terms were in the possession of certain custodians. Ex. 6 (August 28, 2026 email from Galina Fomenkova to Jules Szanton). The government's response to Request for Production of Documents No. 14 is the subject of a Motion to Compel currently pending before this Court. *See* EPDS No. 42.

**H. The government's motion for summary judgment extends to issues outside the Court order.**

On June 30, 2026, the government filed a motion for summary judgment. ECF No. 36. The government's motion is not limited to issues of timeliness. Instead, the government's motion argues that many of Laborant's claims should be denied for reasons unrelated to timeliness. The motion asserts that 301 of the claims at issue have already been paid, that 1,279 were denied because they were submitted with an invalid temporary member ID, and that 177 were not submitted at all. *Id*. at 6. This table summarizes the government's contention as to why claims are not payable:

| Disposition of Claim | Number of Claims |
|---|---|
| Paid | 301 |
| Rejected | |
| Submitted after testing/treatment deadline | 7,395 |
| Invalid temporary member ID | 1,279 (may also all be untimely) |
| No record of claim, *i.e.* not submitted to the UIP | 177 |
| Total | 9,152 |

*Id.*



5445536.1

## IV. LAW

The Court will deny a motion for summary judgment unless "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute is genuine if the evidence would permit a reasonable factfinder to resolve it in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding the motion, the Court does not weigh the evidence or make credibility determinations; the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987) (any doubt over factual issues must be resolved against the movant). Finally, summary judgment is proper, if at all, only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V. DISCUSSION

### A. The government's motion should be denied because Laborant has not yet had the opportunity to explore the government's theories in discovery.

The government's motion amounts to something of a bait-and-switch. The government first promised the Court that the case could be resolved on the narrow question of whether Laborant submitted its claims by the March 22, 2022 date which the government asserts (and Laborant disputes) was the proper deadline to submit claims. *See* ECF No. 32 (the government asserted "plaintiff did not timely submit any of the claims on which its claims are based"). At the government's request, the Court limited discovery to "(1) whether Laborant timely submitted its claims for reimbursement and (2) whether the government breached the implied covenant of good faith and fair dealing when it accelerated the deadline to submit claims for reimbursement." ECF No. 33.

Yet the government's actual motion for summary judgment says something quite different. Of the 9,152 Laborant claims at issue, the government now says that it can only show that 7,395 were submitted after its purported deadline of March 22, 2022:

| Disposition of Claim | Number of Claims |
|---|---|
| Paid | 301 |
| Rejected | |
| Submitted after testing/treatment deadline | 7,395 |
| Invalid temporary member ID | 1,279 (may also all be untimely) |
| No record of claim, *i.e.* not submitted to the UIP | 177 |
| Total | 9,152 |

Government MSJ at 6. For the rest of Laborant's claims, the government asserts it should not have to pay for entirely unrelated reasons: some were supposedly denied due to an invalid temporary member identification, others the government asserts it has already paid, and still others it claims never to have received. In other words, the government now asserts that many of Laborant's claims—while not necessarily untimely—should nevertheless be denied due to various other theories on which the Court has not yet allowed discovery.

Summary judgment is proper, if at all, only "after adequate time for discovery." *Celotex Corp.,* 477 U.S. at 322. And RCFC 56(d) allows the Court to deny summary judgment where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." In this case, adequate discovery would allow Laborant to show that it submitted 9,149 claims that complied with HRSA requirements for claim submission and which remain unpaid. *See* Demianchenko Declaration. In discovery, Laborant would challenge government assertions that 301 of the claims at issue have already been paid, that 1,279 claims at issue lacked valid temporary member IDs, and that 177 claims were never submitted.

In that discovery on non-timeliness topics, Laborant would—for example— be able to use interrogatories and depositions to highlight the government's shifting narrative about the claims that supposedly were denied for non-timeliness reasons (for example, due to the government's assertion that they had already been paid, lacked valid temporary member IDs, or had never been submitted at all). This would involve the use of interrogatories and/or depositions to highlight inconsistencies between the government's January 16, 2024 email explaining why the Laborant's claims had been denied and the narrative the government offers in its Motion for Summary Judgment.

The government's January 16, 2024 email:

| **Disposition of Claim** | **Number of Claims** |
|---|---|
| Claim submitted after testing/treatment deadline (March 22, 2022 at 11:59 PM ET) and rejected | 7,838 |
| Claim not submitted to the UIP | 1,312 |
| Claim paid | 1 |
| Duplicate claim (rejected) | 1 |
| GRAND TOTAL | 9,152 |

The narrative the government offers in its Motion for Summary Judgment:

| Disposition of Claim | Number of Claims |
|---|---|
| Paid | 301 |
| Rejected | |
| Submitted after testing/treatment deadline | 7,395 |
| Invalid temporary member ID | 1,279 (may also all be untimely) |
| No record of claim, *i.e.* not submitted to the UIP | 177 |
| Total | 9,152 |

*Compare* Ex. 2. (Email from Susan Marsiglia to Vladimir Demianchenko dated January 16, 2024) *with* Government MSJ at 6. These figures cannot be reconciled with one another, and at least one is wrong.

Laborant has been permitted to explore ***none*** of these issues in discovery to date because, at the government's request, the Court has limited discovery to timeliness issues. ECF No. 33. The Court should deny summary judgment with respect to these theories.

Nor has discovery to date allowed Laborant to properly "present facts essential to justify its opposition" to summary judgment with respect to the 7,395 claims that the government alleges were submitted after its purported deadline of March 22, 2022, at 11:59 p.m. RCF 56(d). The government's argument for why these claims are supposedly untimely rests entirely on the government's position that a claim was not considered "submitted" until it was "received by OptumServe [a government contractor] at the UIP Electronic Data Interchange (EDI) Gateway." Government MSJ at 4. Yet this standard was never clearly communicated to Laborant and other providers enrolled in the COVID-19 UIP. Emails to Laborant required that claims be "submitted" by March 22, 2022 at 11:59 p.m., without defining what "submitted" meant. *Id*. at Exs. C–D (Emails to providers). Similarly, a government website required that providers' claims be "submitted in the Portal" by the government's purported deadline without explaining what the "Portal" was. *Id*. at Ex. E (HRSA web communication).

As is explained in more detail in Section V.C. of this response, Laborant takes a different view. Laborant argues that its claims were "submitted" to the COVID-19 UIP when they were submitted to Change Healthcare, the government-designated clearinghouse that HRSA had advertised was "working directly with" the government's contractor "to enable the delivery of professional and institutional claims supporting the Payer ID: COVID19 HRSA Uninsured Testing and Treatment Fund." *See* Ex. 5 (Document UIP-LBT001121).

Consistent with the Court's order, Laborant conducted discovery for information directly relevant to its challenge to the government's theory that a claim was "submitted" only when it

was received by a government contractor and not when it was received by a government-designated clearinghouse. As is explained in Laborant's currently-pending Motion to Compel Discovery (ECF No. 42), the government has refused to use any agreed-upon methodology to search its records for documents responsive to Laborant's request about the role of the government-designated clearinghouses in the COVID-19 UIP. This refusal has impaired Laborant's ability to "present facts essential to justify its opposition" to summary judgment even with respect to the 7,395 claims that the government asserts were received at the UIP Electronic Data Interchange (EDI) Gateway after its purported deadline. RCFC 56(d); see also Demianchenko Declaration (explaining what Mr. Demianchenko believes this would show, and explaining why he cannot justify one of his grounds for opposition to summary judgment without this evidence). The government has neither contested Laborant's assertion that these claims were received at a government-designated clearinghouse by the purported deadline nor agreed to search its records for information that might show a sufficient relationship between HRSA or its contractor, OptumServe and these clearinghouses such that submission to the designated clearinghouses would constitute submission to the COVID-19 UIP. Summary judgment without proper discovery is therefore inappropriate.

**B. The government's motion should be denied because there remains a genuine dispute of material fact as to whether a contract existed on March 15, 2022, when the government purported to accelerate Laborant's deadline to submit its claims.**

Even if the government had complied with its discovery obligations and provided Laborant with facts and documents necessary to dispute the government's motion (it did not), the government's motion would still have to be denied because it does not rebut Laborant's contention that the purported acceleration of the claims submission deadline was invalid and ineffective as a breach of the duty of good faith and fair dealing. *See Rumsfeld v. Freedom NY,*

*Inc.,* 329 F.3d 1320, 1330 (Fed. Cir. 2003) (a purported change to a government contract is voidable if effected through coercive government conduct, including a breach of the duty of good faith and fair dealing).

The government's motion makes no attempt—not even as a backup argument—to claim that its conduct at issue was permissible under an implied covenant of good faith and fair dealing. Nor could it. The government allowed Laborant to continue performing services for months even as its funds to pay Laborant gradually depleted. *See* Government MSJ, Ex. A ("Huttinger Declaration"). The government could have given Laborant (and other providers) advanced notice of the loss of funds, so that the COVID-19 UIP providers could have stopped incurring new claims while still maintaining enough time to submit their outstanding claims. Instead—in an apparent effort to save money by increasing the number of claims that it could reject as untimely—the government changed the rules after the fact. Whereas Laborant and other providers originally had 365 days from the date of service to submit their claims, the government's purported acceleration gave Laborant just 7 days from the government's notice to submit its claims. This change purported to apply even for services that Laborant had performed under the old rules. The government's behavior cannot possibly be reconciled with a duty of good faith and fair dealing which requires the government to act so as "not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States,* 395 F.3d 1283, 1304 (Fed. Cir. 2005).

Instead of defending its conduct substantively, the government asserts that it had no duty of good faith or fair dealing because it had no contract with Laborant. The government argues that no contract exists because—the government says—Laborant did not submit timely claims, as was required by the terms of the COVID-19 UIP. Government MSJ at 11–12.

This argument runs headlong into this Court's decision on the government's motion to dismiss. In that decision, the Court found that Laborant's complaint had alleged that the COVID-19 UIP effectively functioned as an offer that Laborant could accept by conduct:

> Laborant's allegations, taken as true, are sufficient to support its claim that the government made an offer to reimburse it at Medicare rates if it provided covered services to uninsured individuals in compliance with the Terms and Conditions of the Uninsured Program. They are also sufficient to show Laborant accepted the government's offer in the manner the government required when Laborant enrolled in the Program, expressly agreed to its Terms and Conditions, performed covered services, and filed claims for payment.

*Laborant, LLC v. United States,* 180 Fed. Cl. 76, 84 (2026). In other words, the Court found that (at least as per Laborant's pleadings), the government offered to pay Laborant if Laborant did certain things. Laborant did those things. Therefore, the government had a contractual requirement to pay Laborant. *Id*.

The government seizes on the fact that the government's offer required Laborant to "fil[e] claims for payment," and—because, it says, Laborant did not submit claims by its accelerated deadline—there was no contract. But the government misunderstands the law regarding a contract created by a unilateral offer accepted by conduct. To be sure, when one party unilaterally offers compensation in exchange for certain performance steps, the offeree may not collect compensation unless it has taken all performance steps specified in the offer. But it does not follow that no contract exists until all performance steps are complete. As the Restatement (Second) of Contracts explains:

> (1) Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, ***an option contract is created when the offeree tenders or begins the invited performance*** or tenders a beginning of it.

> (2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer.

Restatement (Second) of Contracts § 45 (1981). In other words, while the offeree must ultimately complete her "tender of the invited performance in accordance with the terms of the office," a contract comes into being before that point in time. The "option contract is created" at the point when she "begins the invited performance." *Id*.

This Court has said as much. Citing to Restatement (Second) of Contracts § 45 (1981), the Court has held that once an offeree begins performance in response to an offeror's promise, the offer becomes an option contract with terms the government cannot unilaterally modify. *Davies Precision Machining, Inc. v. United States,* 35 Fed. Cl. 651, 661 (1996), citing Restatement (Second) of Contracts § 45 (1981). Furthermore, "[o]nce the contractor has substantially performed under the option… that contractor has accepted the Government's offer ***and a supply contract exists***." *Id.* (emphasis added).

Applied to the instant case, the government has failed to offer facts disproving Laborant's allegations that the government offered to reimburse Laborant at Medicare rates if it performed services and submitted invoices in accordance with the COVID-19 UIP terms and conditions. Therefore, there is—at least—a material dispute of fact as to whether Laborant was in the midst of accepting the government's unilateral offer when the government changed Laborant's deadline to submit claims for payment. If Laborant had already "substantially performed"—for example, by providing services to uninsured patients—then a contract existed even before Laborant had finished performing all steps required by the government's unilateral offer. With a contract in place, the government was subject to the duty of good faith and fair dealing. Summary judgment is therefore inappropriate.

### C. The government's motion should be denied because there remains a genuine dispute of material fact as to what it meant for Laborant to "submit" claims for its services.

Finally, even if the government had complied with its discovery obligations and provided Laborant with facts and documents necessary to respond to the government's motion (it did not), ***and***, even if no contract—and thus no duty of good faith and fair dealing—existed when the government purported to accelerate Laborant's deadline to submit claims (such a contract did exist), the government's motion would still have to be denied because there remains a genuine dispute of material fact as to what it meant for Laborant to "submit" claims for its services. Uncontradicted evidence shows that Laborant submitted its claims to Change Healthcare—a clearinghouse partner that HRSA identified as "working directly with" the COVID-19 UIP—by 11:59 p.m. on March 22, 2022. *See* Ex. 1 (Optum Letter). Even if the government was somehow authorized to effectuate its after-the-fact acceleration of Laborant's claim submission deadline, there is a disputed material fact as to whether submission to Change Healthcare complied with the government's communications about its accelerated deadline.

The government's motion focuses on showing that Laborant's claims were not received in a "UIP EDI Gateway" by 11:59 p.m. on March 22, 2022. Government MSJ at 4. But the government has skipped a step. The government has not shown that its communications about its accelerated deadline defined "submission" of a claim as submission to this "UIP EDI Gateway." In fact, the communications did not do this. Instead:

- The government sent two emails informing providers that "[o]n March 22, 2022 at 11:59 pm ET, the HRSA COVID-19 Uninsured Program will stop accepting claims for testing and treatment due to a lack of sufficient funds." Government MSJ, Exs. C–D. These communications advised providers that "[c]laims ***that have been submitted*** by this deadline will be

paid subject to eligibility and availability of funds." *Id*. (emphasis added). This communication did not explain what "submitted" meant. *Id*.

- A HRSA website stated that "the deadlin[e] to ***submit***…Testing claims" was March 22, 2022, at 11:59 p.m. ET. Government MSJ, Ex. E (emphasis added). Again, "submit" is undefined.
- The same website stated that "[a]ny testing and treatment claims ***submitted in the Portal*** after March 22, 2022, will not be adjudicated for payment." *Id.* (emphasis added). "The Portal" is left undefined.

That is it. The government's motion offers no additional communications provided to providers about the accelerated deadline. The government has offered ***no*** evidence to suggest that it ever told providers that its claims must be received by a UIP EDI Gateway by the accelerated deadline.

In fact, Laborant has offered evidence that it reasonably interpreted the government's communications as requiring submission to a government-designated clearinghouse by the accelerated deadline. *See* Demianchenko Declaration. While the government's motion heaps scorn on the idea that submission to Change Healthcare could possibly be construed as submission to HRSA's COVID-19 UIP, the facts show that Change Healthcare operated as a HRSA-endorsed partner responsible for the submission of claims for the COVID-19 UIP. HRSA said so itself. In this flyer published by HRSA itself, HRSA advertised that Change Healthcare is "working directly with" a HRSA contractor "to enable the delivery of professional and institutional claims supporting the…COVID19 HRSA Uninsured Testing and Treatment Fund." *See* Ex. 5 (Document UIP-LBT001121).

HRSA
Health Resources & Services Administration

# HRSA COVID-19 Uninsured Program

## Clearinghouse Partners

Optum is working directly with several clearinghouses/vendors to enable the delivery of professional and institutional claims supporting the Payer ID: COVID19 HRSA Uninsured Testing and Treatment Fund. The list of clearinghouses/ vendors below have committed to submitting claims as part of this program.

Health care providers that utilize a clearinghouse that is not listed below should contact their current clearinghouse to ensure they partner with or establish a partnership with one of these designated clearinghouses/vendors.

ABILITY Network
ACSMD
AdminiStep aka Legacy
Allscripts / PayerPath
AlveoHealth aka The Consult
Athena Health
Availity, LLC
Cerberus Healthcare aka Claims Network
Change Healthcare
Claim MD
Claim Remedi / eSolutions / PracticeInsight
ClaimLynx
CompuGroup / Healthport
CortexEDI
EDI360
Eligible Inc
eMedical Practice
eProvider Solutions
Greenway / Global Health Net
Hcmet Inc
HDX / Cerner
Healthcare IP
Healthec aka IGI
Healthfusion / Nextgen
IDX / GE Healthcare
Infinedi
Inmediata, LLC
InstaMed
Med Claims Proc Systems
Medassets / XACTIMED / Nthrive
Office Ally
Optum Clearinghouse
Payer Connection, LLC / nka VisibilEDI
PHICure
Physicians Computer Company
Premier Health Solutions
Proclaim Partners
ProData
Quadax
Rycan
SSI
TK Software
Transaction Methods / Post-n-Track
Trizetto / ClaimLogic
VipaHealth
Waystar
XIFIN

**To learn more about the HRSA COVID-19 Uninsured Program, go to COVIDUninsuredClaim.linkhealth.com.**

Reimbursement applies to eligible claims, as determined by HRSA (subject to adjustment as may be necessary), for dates of service or admittance delivered on or after February 4, 2020, for testing or treatment claims, and on or after December 14, 2020, for vaccine administration claims, subject to available funding; see details at hrsa.gov/coviduninsuredclaim. Terms and conditions will apply. Content subject to change.

*Id.*

Having been told that Change Healthcare was working directly with HRSA's contractor to submit claims, Laborant reasonably believed that submission to Change Healthcare satisfied the government's accelerated deadline. *See* Demianchenko Declaration. The government easily could have clarified at the time—and not just in a court filings years later—that it actually meant that claims must be received by a "UIP EDI Gateway" by 11:59 p.m. on March 22, 2022. But it did not do this. As a result, there remains a disputed material fact as to what it meant for Laborant to "submit" its claims. The meaning of this term must be determined at trial—where the Court can weigh the credibility of witnesses with conflicting testimony—and not through motions practice. In light of this disputed material fact, the government's motion must be denied.

## VI. CONCLUSION

For the foregoing reasons, Laborant respectfully requests that the Court deny defendant's motion for summary judgment.

Respectfully submitted

ROGERS JOSEPH O'DONNELL

By: s/ ______________________________

Aaron P. Silberman
311 California Street, 10th Floor
San Francisco, CA 94104
Tel: 415-956-2828
Asilberman@rjo.com

Jules L. Szanton
1500 K Street NW, Suite 800
Washington, DC 20005
Tel: 202-777-8950
Jszanton@rjo.com

September 4, 2026

*Counsel for Laborant, LLC*